IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA MARCH, AS POWER OF ATTORNEY FOR
ELSIE RAABE,

    Plaintiff,

v.                                                    Case No. 1:21-cv-00921

RAYMOND RAABE, JOHN ARIGO,
AND FIDELITY MANAGEMENT TRUST
COMPANY,

    Defendants.

**COMPLAINT FOR DAMAGES**

COMES NOW Linda March, as Power of Attorney for Elsie Raabe, by and through her counsel of record, The Law Office of Cristy J. Carbón-Gaul (Cristy J. Carbón-Gaul), and for her Complaint for Damages states as follows:

**JURISDICTION AND VENUE**

1. Linda March ("Plaintiff") resides in Bucks County, State of Pennsylvania.

2. Upon information and belief, Raymond Raabe resides in Warren County, State of New Jersey.

3. Upon information and belief, John Arigo resides in Morris County, New Jersey.

4. Fidelity Management Trust Company, is a Massachusetts domestic foreign profit company, doing business in the State of New Mexico.

5. The events material to this Complaint predominately occurred in Bernalillo County, State of New Mexico.

6. The amount in controversy exceeds $75,000.

1

7. There is complete diversity among the Plaintiff and Defendants.

8. Jurisdiction and venue are proper.

## BACKGROUND

9. Robert Emmett Sheridan ("Decedent") died on October 21, 2020, in Albuquerque, New Mexico. At the time of his death, Decedent was seventy-seven (77) years old and domiciled in the county of Bernalillo, State of New Mexico.

10. Decedent had no children, no spouse, and no surviving parents at the time of his death.

11. Decedent died intestate.

12. Decedent's close friend, Dolores Welks-Jack, opened a probate matter and was appointed as the Personal Representative of Decedent's Estate.

13. Pursuant to the laws of intestate succession in the State of New Mexico, Elsie Raabe, Decedent's aunt, is the sole beneficiary of Decedent's estate.

14. Decedent had an extremely close relationship with his aunt, Elsie Raabe, who acted as a mother-figure for Decedent after the passing of Decedent's biological mother.

15. Throughout their decades long friendship, the Personal Representative and the Decedent had conversations regarding Decedent's aunt, Elsie Raabe.

16. Decedent expressed his desire to the Personal Representative that his Aunt, Elsie Raabe, was the one he wanted to receive his estate.

17. Elsie Raabe has two adult children – Plaintiff Raabe and Defendant Raabe.

18. Plaintiff is the Power of Attorney for her mother, Elsie Raabe, under a Power of Attorney dated October 14, 2014. A copy of the Power of Attorney is attached hereto and incorporated herein as **Exhibit A.** The POA became effective upon the signor's incapacity. Elsie

Raabe was diagnosed with dementia in 2020 and is considered to be "disabled" as defined in Paragraph 1 of the Power of Attorney. The Power of Attorney grants Plaintiff the authority to file a cause of action on behalf of Elsie Raabe to enforce her rights.

19. In addition to his estate assets, Decedent had a retirement account that is a non-probate asset, Fidelity Prototype Retirement Plan Brokerage Account with Defendant Fidelity (Acct: XXX-XX6653).

20. Elsie Raabe is the original beneficiary of Decedent's retirement account with Fidelity Management Trust Company.

21. After Decedent passed away, the Personal Representative learned from Defendant Raabe that Raabe convinced the Decedent in New Mexico to change the beneficiary designation on the Retirement Account from Elsie Raabe to himself and Defendant Arigo, who is Raabe's first cousin and a second cousin to Decedent.

22. Upon information and belief, Decedent changed the beneficiary designation with the New Mexico branch of Defendant Fidelity, with Decedent's New Mexico broker.

23. Decedent suffered an emergency medical crisis during the fall of 2020 resulting in his hospitalization. Upon presentation to the emergency room, it took three (3) weeks for the hospital staff to obtain enough information from him to find his insurance and an emergency contact at his primary hospital. Decedent's mental cognition had seriously declined.

24. Following his admission to the hospital, the medical staff determined that Decedent was totally incapacitated.

25. Although he was diagnosed in 2020, Decedent was showing signs of incapacity in early 2019.

26. Around this time, Defendant Raabe and/or Arigo took advantage of Decedent's deteriorating cognition and coerced and unduly influenced Decedent to change the beneficiary designation on the Retirement Account from Elsie Raabe to Defendants Raabe and Arigo.

**COUNT I: OVERTURN BENEFICIARY DESIGNATION FOR FRAUD, COERCION, AND UNDUE INFLUENCE AND REINSTATE PRIOR BENEFICIARY DESIGNATION**

27. Plaintiff reincorporates by reference the preceding paragraphs fully set forth herein.

28. Plaintiff has received little information concerning the beneficiary designation from Defendant Raabe, or any of its related documentation and makes the allegations herein based upon information and belief.

29. Defendant Fidelity has denied Plaintiff's request for information regarding the Decedent's Retirement Account.

30. Upon information and belief, Defendant Raabe exerted undue influence over Decedent to induce him into changing the beneficiary designation on the Fidelity Retirement Account.

31. In the alternative, if Defendant Raabe did not induce Decedent to change the beneficiary designation, then the designation was forged by Defendant Raabe and executed under false pretenses.

32. Upon information and belief, Defendant Raabe took advantage of Decedent's age and weakened physical and mental condition to change the beneficiary designation.

33. Upon information and belief, Defendant Raabe dominated the Decedent.

34. There was a confidential relationship between Decedent and Defendant Raabe.

35. There are suspicious circumstances surrounding the change of the beneficiary designation, which creates a prima facie presumption of undue influence.

36. Decedent intended that he would provide for Elsie's care until her death, and Defendant Raabe exploited the closeness of Decedent's relationship with Elsie by convincing the Decedent that he, Defendant Raabe, was taking care of her.

37. Defendant Raabe misrepresented to Decedent that he was caring for Elsie, which is not true, in order to induce Decedent to change the beneficiary designation from his sister to Defendant Raabe to be used for Elsie's care.

38. Decedent was in a significantly weakened physical and mental condition, which made him susceptible to influence. When assessed in August of 2020 regarding his capacity, he was found to need full assistance with making appropriate living arrangements, communicating, behaving safely, managing his estate or financial matters, and managing other personal matters. He was also found substantially unable to manage his financial affairs, and in the opinion of the healthcare professional was totally incapacitated.

39. Upon information and belief, a similar level of incapacity was evident in the Decedent's behavior in early 2019.

40. Evidence of Decedent's incapacity exists at least into early 2019, before he was induced to sign the beneficiary change.

41. Decedent, in 2019, was convinced by a landscaping company to trade his fixed-up 1969 Pontiac GTO for approximately $5,000 to $10,000 worth of landscaping services. He spent significant time and money fixing the vehicle. It was the Decedent's prized possession. On the classic car market, a 1969 Pontiac GTO can sell for anywhere from $30,000 to $75,000, vastly more than the value of the landscaping services.

42. Decedent, on or near August of 2019, was also almost taken advantage of by an individual trying to sell him $40,000 worth of stereo and sound equipment. Decedent almost

purchased the equipment, but his RBC Wealth Manager intervened and reported the dealer to the City for elder abuse.

43. There was a lack of consideration for the Decedent to change the beneficiary designation to Defendant Raabe and Defendant Arigo. There is no indication that Decedent was close with either of them, as he rarely spoke about them, except to express his dislike for them.

44. The disposition of the property is unnatural and unjust, as it is inconsistent with Decedent's previously expressed intentions regarding taking care of his Aunt Elsie Raabe.

45. Defendant Raabe directly participated in procuring a change to the beneficiary designation so that it named him and Defendant Arigo.

46. Defendant Raabe never disclosed the change during Decedent's life to either Plaintiff March or Elsie Raabe. Plaintiff March and Elsie Raabe only learned of the change after Decedent's passing and were informed by the Personal Representative of Decedent's Estate, rather than Plaintiff Raabe.

47. Upon information and belief, Decedent was coerced into signing the change of beneficiary designation for the Fidelity Retirement Account by misrepresenting that he, Defendant Raabe, was caring for Elsie Raabe and that she was living at his home.

48. Decedent's intention with his Fidelity account was that it would take care of Elsie Raabe, and so he was fraudulently induced to change the beneficiary designation to Defendant Raabe as he was purportedly providing for her care and maintenance.

49. Defendant Raabe, by his words and conduct, *misrepresented* his relationship with Elsie to Decedent, *intending* to deceive and cheat Decedent.

50. Defendant Raabe *knew* that Elsie Raabe did not live with him, but rather with Plaintiff March.

51. Defendant Raabe *intended to induce Decedent's reliance on his misrepresentation* in order to have the beneficiary designation on Decedent's retirement account changed from Elsie Raabe to Defendant Raabe and Defendant Arigo.

52. Because of Defendant Raabe's misrepresentation and Decedent's reliance on it, Defendant Raabe obtained the retirement account pay-on-death designation meant for Elsie.

53. Defendant Raabe and/or Defendant Arigo intended to defraud Decedent.

54. The Fidelity account would have transferred to Elsie Raabe upon Decedent's death.

55. Decedent's change to the beneficiary policy was made under Defendant's false assertions that Elsie Raabe was living in his home, when Elsie Raabe lives with Plaintiff March, who manages her finances and care.

56. Elsie Raabe is damaged as the Retirement Account intended to contribute to her support was taken.

57. Decedent's change to the beneficiary policy was also made under Defendant Raabe's false assertions that he was providing money for Elsie Raabe's care. Plaintiff March manages Elsie Raabe's financial accounts as Elsie's Power of Attorney, and Elsie Raabe has not received financial support from Defendant Raabe.

58. It is equitable relief for the current beneficiary designation naming Defendant Raabe and Defendant Arigo to be overturned, and the prior beneficiary designation naming Elsie Raabe be reinstated (*Walters v.* Walters, 1920-NMSC-021, 26 N.M. 22, 188 P. 1105 (S. Ct. 1920)).

## COUNT II: DAMAGES FOR INTENTIONAL INTERFERENCE WITH NON-PROBATE TRANSFER

59. Plaintiff reincorporates the preceding paragraphs by reference as though fully set forth herein.

60. Upon information and belief, Defendants Raabe and/or Arigo, intentionally interfered with Elsie Raabe's expected distribution from the retirement account by unduly influencing the Decedent and taking advantage of the Decedent's weakened state to induce him to change the beneficiary on his Account.

61. Elsie Raabe reasonably expected to be the beneficiary of the Decedent's retirement account.

62. There is reasonable certainty that the expectancy of Elsie Raabe receiving the Decedent's retirement account would have been realized, but for Defendant Raabe's and/or Defendant Arigo's interference in the distribution. Elsie Raabe would have been the individual to receive the funds if it was not for Defendant Raabe and/or Defendant Arigo unduly influencing Decedent to change the beneficiary.

63. Defendant Raabe and/or Defendant Arigo unduly influenced the Decedent to change the beneficiary designation to name them, and such conduct was a tortious interference.

64. Defendant Raabe and/or Defendant Arigo intentionally kept the change secret from Elsie Raabe, the original beneficiary of the Decedent's retirement account.

65. Elsie Raabe has suffered an unknown amount of damages as a result of Defendant Raabe's and/or Defendant Arigo's tortious interference; Defendant Raabe has refused to provide any information regarding the value of the assets and Plaintiff March had to file this suit in order to obtain any additional information.

## COUNT III: ATTORNEY FEES & COSTS

66. Plaintiff March reincorporates the preceding paragraphs by reference as though fully set forth herein.

67. While New Mexico adheres to the "American Rule" regarding attorney fees, an award of attorney fees is allowed in cases of tortious interference.

68. Reimbursement of attorney fees in this matter is an equitable relief for the damages caused by Defendant Raabe and/or Defendant Arigo.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enjoin Defendant Fidelity from distributing the Decedent's retirement account pending resolution of this matter;

B. Enter an Order setting aside the beneficiary designation change that names Defendant Raabe and Defendant Arigo, and reinstating the prior beneficiary designation naming Elsie Raabe;

C. Award damages against Defendant Raabe and Defendant Arigo in an amount to be determined for their tortious interference in preventing distribution of Decedent's retirement account to the rightful beneficiary, Elsie Raabe;

D. Reimburse Plaintiff's attorney fees and costs incurred in this matter; and

E. For such other and further relief as this Court may deem just or equitable.

THE LAW OFFICE OF CRISTY J. CARBÓN-GAUL

By: */s/ Cristy J. Carbón-Gaul*
      Cristy J. Carbón-Gaul
*Attorney for Plaintiff*
10515 4th Street NW
Albuquerque, New Mexico 87114
(505) 899-5696